**Petition for Review of the Application of CHA'O LI CHI, also known as Cha'o Pieh Chi, Petitioner-Appellant,**

v.

**John L. MURFF, District Director of Immigration and Naturalization for the District of New York, Respondent-Appellee.**

No. 65, Docket 24561.

United States Court of Appeals Second Circuit.

Argued Nov. 13, 1957.

Decided Dec. 31, 1957.

Edward J. Ennis, Benjamin Gim, New York City (Clifford Forster, New York City, of counsel), for petitioner-appellant.

Paul W. Williams, U. S. Atty. for the Southern Dist. of New York, New York City (Roy Babitt, Sp. Asst. U. S. Atty., Harold J. Raby, Asst. U. S. Atty., New York City, of counsel), for respondent-appellee.

Before CLARK, Chief Judge, MOORE, Circuit Judge and LEIBELL, District Judge.

LEIBELL, District Judge.

Petitioner is a native and citizen of China. He entered the United States on February 3, 1939, under Section 3 (1) of the Immigration Act of 1924,* as a member of the family of a Chinese government official associated with the Consul General in New York. The petitioner's status was dependent upon the continuance of his father's status. Petitioner's father terminated his work here and returned to China in 1946. Petitioner, his mother, a brother and a sister remained here and were subjected to deportation proceedings.

* Now 8 U.S.C.A. § 1101(a) (15).

In connection with the deportation proceedings petitioner and members of his family applied for suspension of deportation under the provisions of Section 19(c) (2) (b) of the Immigration Act of 1917, as amended July 1, 1948 (62 Stat. 1206).[1] By an order dated May 11, 1950 the Board of Immigration Appeals granted the application of all four persons for suspension of deportation and on June 1, 1950 their cases were referred to Congress, in accordance with the provisions of the Act.

On December 27, 1950, the Commissioner moved before the Board of Immigration Appeals requesting that the outstanding order of the Board dated May 11, 1950, granting the petitioner and three others suspension of deportation be rescinded; that steps be taken to withdraw the cases from Congress; and that the proceedings be reopened for further consideration. In support of its motion the Commissioner stated that a communication had been received from the local immigration office stating that petitioner's mother and his sister had returned to China; and that a further investigation was desired before the immigration status of the remaining members of the family, petitioner and his brother, was legalized. By an order dated January 31, 1951, the Board of Immigration Appeals granted the motion of the Commissioner; rescinded their prior order of May 11, 1950, and ordered that the proceedings in the cases of petitioner and his brother "be reopened for such further consideration as may be appropriate." Subsequently petitioner's brother also returned to China.

On July 26, 1951, petitioner was granted a hearing before an Immigration Special Inquiry Officer in New York, in order to afford petitioner an opportunity to show why he should not be deported from the United States. There was considerable delay, but finally on December 4, 1952, the hearing officer rendered a decision denying the application of petitioner, and he ordered that petitioner "be deported from the United States pursuant to law on the charge stated in the warrant of arrest," dated June 7, 1949, for his failure to maintain an exempt status.

A warrant ordering that petitioner be deported to China at the expense of the United States Government was issued on December 4, 1952. Petitioner received a number of postponements and finally on November 17, 1954, he executed an affidavit which he served upon the immigration authorities in the deportation proceeding. The affidavit recited that he had been ordered to surrender into the custody of the Immigration and Naturalization Service for deportation to China via Hong Kong on November 22, 1954, pursuant to formal demand dated October 22, 1954; that he wished a stay of execution of the order of December 4, 1952, under Section 1253(h) of Title 8 U.S.C.A. on the ground that the mainland of China is under the control of a communistic government, and that if he were deported to China he would be subjected to physical persecution. The affidavit also stated that petitioner was "concurrently submitting an application for adjustment of [his] status under Section 6 of the Refugee Relief Act of

1. "(c) In the case of any alien (other than one to whom subsection (d) is applicable) who is deportable under any law of the United States and who has proved good moral character for the preceding five years, the Attorney General may * * * ; (2) suspend deportation of such alien if he is not ineligible for naturalization or if ineligible, such ineligibility is solely by reason of his race, if he finds * * * ; (b) that such alien has resided continuously in the United States for seven years or more and is re-

siding in the United States upon the effective date of this Act. If the deportation of any alien is suspended under the provisions of this subsection for more than six months, a complete and detailed statement of the facts and pertinent provisions of law in the case shall be reported to the Congress with the reasons for such suspension." (Now 8 U.S.C.A. § 1254(a) (1, 2) [Subsection (d) is inapplicable to the alien petitioner in this case.]

1953" [50 U.S.C.A. Appendix § 1971d];[2] and he requested that the proceedings which led to the order of petitioner's deportation be reopened and reconsidered. On November 23, 1954, petitioner filed an "Application to Adjust Immigration Status under Section 6 of the Refugee Relief Act of 1953."

On May 5, 1955, petitioner was given a hearing before a Special Inquiry Officer, on his application seeking adjustment of his immigration status under Section 6 of the Refugee Relief Act of 1953. On May 10, 1955, the Special Inquiry Officer recommended that petitioner's "application for adjustment of immigration status under the provisions of Section 6 of the Refugee Relief Act of 1953, be denied for the reason that he is not presently qualified for admission into the United States under the provisions of the Immigration and Nationality Act," holding in part that on "the basis of confidential and secret information of a nature which prohibits its disclosure to the applicant however, it is concluded that were the applicant at this time seeking admission to the United States, he would be inadmissible

to this country under the provisions of Section 212(a) (27) of the Immigration and Nationality Act of 1952" [T. 8 U.S. C.A. § 1182(a) (27)].[3] On June 16, 1955 the recommendation was approved by the Acting Regional Commissioner.

On May 26, 1955, petitioner was given a hearing before a Special Inquiry Officer on his application for relief under Section 1253(h) of Title 8 U.S.C.A.[4] On May 31, 1955, the Special Inquiry Officer recommended that petitioner's application be denied and "that the deportation of the applicant alien to China be not withheld on the ground that the alien would be subject to physical persecution therein." The recommendation was based in part also upon "confidential and secret information" not disclosed to the petitioner. The recommendation was approved by the Acting Regional Commissioner on June 15, 1955. On June 21, 1955, the District Director wrote petitioner and made a formal demand upon him to surrender to the Deportation Control Officer on July 6, 1955, for deportation to China. Then followed proceedings in the United States District Court for the Southern District of New

2. "Any alien who establishes that prior to July 1, 1953, he lawfully entered the United States as a bona fide nonimmigrant and that he is unable to return to the country of his birth, or nationality, or last residence because of persecution or fear of persecution on account of race, religion, or political opinion, * * * may, not later than June 30, 1955, apply to the Attorney General of the United States for an adjustment of his immigration status. If the Attorney General shall, upon consideration of all the facts and circumstances of the case, determine that such alien has been of good moral character for the preceding five years and that the alien was physically present in the United States on the date of the enactment of this Act [August 7, 1953] and is otherwise qualified under all other provisions of the Immigration and Nationality Act [chapter 12 of Title 8] except that the quota to which he is chargeable is oversubscribed, the Attorney General shall report to the Congress all the pertinent facts in the case."

3. "§ 1182. Excludable classes of aliens; non-applicability to certain

aliens; waiver of requirements; parole of aliens; report to Congress; suspension of entry by President

"(a) Except as otherwise provided in this chapter, the following classes of aliens shall be ineligible to receive visas and shall be excluded from admission into the United States:

* * * * *

"(27) Aliens who the consular officer or the Attorney General knows or has reason to believe seek to enter the United States solely, principally, or incidentally to engage in activities which would be prejudicial to the public interest, or endanger the welfare, safety, or security of the United States; * * *."

4. [§ 1253]
"(h) The Attorney General is authorized to withhold deportation of any alien within the United States to any country in which in his opinion the alien would be subject to physical persecution and for such period of time as he deems to be necessary for such reason. June 27, 1952, c. 477, Title II, ch. 5, § 243, 66 Stat. 212."

York, in an action for a declaratory judgment under the Administrative Procedure Act.[5]

On July 1, 1955, petitioner's attorney obtained an order to show cause on a motion for an order of the court staying the execution of the order of deportation against the petitioner, pending a hearing and determination of petitioner's court petition filed June 30, 1955, requesting a review of the orders and decisions of the Hearing Officer and Regional Commissioner. The Court Clerk's docket entries disclose that petitioner's attorney on July 12, 1955, filed an amended petition and that on July 21, 1955, he filed a further amended petition. On August 25, 1955, the respondent filed a cross-motion to dismiss the petition on its merits. Both petitioner's motion and respondent's cross-motion came on for a hearing before Judge Noonan on September 6, 1955.

From the foregoing it appears that when the court proceedings were instituted petitioner had applied to the Immigration authorities for adjustment of status under 50 U.S.C.A.Appendix, § 1971d (the Refugee Relief Act of 1953, § 6) and for a stay of deportation under 8 U.S.C.A. § 1253(h); and that these applications had been denied by the Immigration authorities on the grounds that secret and confidential information established that petitioner was ineligible for such adjustment of status because he was not otherwise qualified under the nonquota provisions of the Immigration and Nationality Act, namely 8 U.S.C.A. § 1182(a) (27) and that the applicant's deportation should not be withheld because he would not be subject to physical persecution in China.

On review Judge Noonan remanded the Section 6 proceeding for further hearing. In his view deportation of petitioner, a resident alien, pursuant to 8 U.S.C.A. § 1182(a) (27) on secret information would be unconstitutional as a deprivation of procedural due process, and therefore Congress must have intended a full-fledged hearing by the Attorney General under the Refugee Relief Act of 1953 to determine an alien's eligibility under the nonquota provisions of the Immigration and Nationality Act. Further, such intent is obvious from Congress' use of the clause "the Attorney General shall, upon consideration of all the facts and circumstances, of the case, determine." That clause requires a hearing at which the alien has the opportunity to rebut unfavorable evidence; so the government must divulge the broad outlines of the confidential information in order that petitioner may rebut it, if possible.

On the further administrative hearing following the remand the government divulged the "categories" of secret information and petitioner testified in rebuttal. This time, instead of denying petitioner's application on the grounds that he was ineligible under the nonquota provisions, the immigration authorities said that he had failed to establish that he was unable to return to Red China because of fear of persecution. Petitioner claims that this decision was arbitrary and capricious and that the use of confidential information in arriving at it was unlawful and unconstitutional.

Petitioner sought a court review of that decision in an action under the Declaratory Judgment Act, T. 28 U.S.C. § 2201 instituted in the District Court on the filing of a "petition" (not a "complaint") on June 30, 1955. He contended before Judge McGohey that such determination was against the evidence and against the weight of the evidence. He did not mention any alleged unlawful or unconstitutional receipt of evidence. Judge McGohey ruled against petitioner, denied the motion to review and granted the government's motion for summary judgment, and entered an order to that effect.

Under 8 U.S.C.A. § 1253(h), the Attorney General is authorized to withhold deportation of an alien to any country in which, in his opinion, the alien would

5.  T. 5 U.S.C.A. § 1009(b); Shaughnessy v. Pedreiro, 349 U.S. 48, 75 S.Ct. 591, 99 L.Ed. 868.

be subject to physical persecution. We held that the Commissioner, in denying an application under this section, could resort to confidential information outside the record without denying a resident alien procedural due process. United States ex rel. Dolenz v. Shaughnessy, 2 Cir., 206 F.2d 392. The Commissioner's decision under the Refugee Relief Act, § 6, whether or not the alien has established that he is unable to return to the country of his birth because of fear of persecution is the same kind of decision, i. e., it depends not only upon the petitioner's background, but on conditions in the country of his birth. Congress apparently intended no different procedure in ascertaining these conditions for the purposes of a Section 6 application. Further, here the Commissioner did inform petitioner of the confidential information on which the decision in part was based. Although petitioner was not informed of the source of this information, he was given the opportunity to rebut it. The information (which the petitioner admitted and explained) can be interpreted to show that he will not be persecuted upon his return to Red China. The Commissioner's conclusion is thus far from arbitrary or capricious.

Petitioner also argues that the language of Section 6 indicates that Congress intended a full-fledged hearing on Section 6 applications—unlike the hearing intended on applications under 8 U.S.C.A. § 1253(h). This was the basis for Judge Noonan's decision. But here we are concerned with that part of Section 6 which says that after the alien establishes that he is unable to return to his country because of fear of persecution he may apply to the Attorney General for adjustment of status. The portion of the statute with which Judge Noonan was concerned says that the Attorney General will then determine on all the facts and circumstances that petitioner is otherwise eligible under the nonquota provisions of the Immigration and Nationality Act. We cannot read into the word "establish" the type of hearing which petitioner claims is intended (i. e., that the informants who were the source of the confidential information should be produced for cross-examination by the alien), particularly because of the "political" type of decision required of the Commissioner regarding fear of persecution.

The order of the District Court, dated November 17, 1956, is affirmed.